IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

LONNIE KADE WELSH,                    §
Institutional ID No. 6516607,         §
                                      §
            Plaintiff,                §
                                      §    CIVIL ACTION NO. 5:19-CV-255-BQ
v.                                    §
                                      §
LUBBOCK COUNTY, *et al.*,              §
                                      §
            Defendants.               §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Proceeding pro se and *in forma pauperis*, Lonnie Kade Welsh filed this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights while detained at the Lubbock County Jail (Jail). Welsh seeks monetary damages for his alleged injuries. Compl. 12–17, ECF No. 1.

Welsh filed his Complaint on November 27, 2019. ECF No. 1. The United States District Judge granted Welsh's Application to Proceed *In Forma Pauperis* (IFP) (ECF Nos. 2, 9) and transferred this case to the undersigned United States Magistrate Judge. ECF No. 9. The undersigned thereafter reviewed Welsh's Complaint and authenticated records provided by Lubbock County, and ordered Welsh to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.3d 886, 893–93 (5th Cir. 1976), which he timely completed and returned. ECF Nos. 17, 19.

Not all parties have consented to proceed before the undersigned magistrate judge. In accordance with the order of transfer, the undersigned makes the following findings, conclusions, and recommendations to the United States District Judge.

# I.    Standard of Review

Section 1915(e) requires dismissal of an IFP complaint *at any time* if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.[1]    28 U.S.C. § 1915(e)(2)(B)(i)–(iii); *see Newsome v. E.E.O.C.*, 301 F.3d 227, 231–33 (5th Cir. 2002) (affirming dismissal of pro se, non-prisoner plaintiff's claims as frivolous and for failure to state a claim under § 1915(e)(2)(B)(i) and (ii)).    A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).    A complaint has no arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327.    When analyzing a pro se plaintiff's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' in forma pauperis claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).    And while courts

---

[1] At the time he filed his Complaint and IFP application, Welsh was housed at the Texas Civil Commitment Center under an order and judgment of civil confinement.    Thus, he is not a "prisoner" within the meaning of 28 U.S.C. § 1915(h) and is not subject to the screening provisions of the Prison Litigation Reform Act.    Because Welsh sought and was granted leave to proceed IFP, however, he is nevertheless subject to the screening provisions of 28 U.S.C. § 1915(e)(2).    Moreover, the acts he complains of allegedly occurred during his detention pending state criminal charges.    The Court therefore evaluates his claims under the constitutional standards applicable to pretrial detainees— not civilly committed persons.

hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II.   **Discussion**

### A. Welsh's Claims

Welsh asserts claims against the following Defendants: (1) Lubbock County; (2) Lubbock County Sheriff Kelly Rowe; (3) Jail Administrator C. Scott (first name unknown); (4) Sergeant Payne (first name unknown); (5) Sergeant K. Young (first name unknown); (6) Sergeant McDaniel (first name unknown); (7) Captain Ron Jenkins; and (8) an unknown Jail officer (Unknown Officer). Compl. 2. Welsh sues Sheriff Rowe and Jail Administrator Scott in their individual and official capacities; all others are sued solely in their individual capacities. *Id.*

Welsh alleges various constitutional violations[2] based on the following categories of complaints:

### *1. Special Housing Unit Placement*

Welsh alleges that between December 5, 2017, and January 8, 2018,[3] while in the Jail, Defendant Young placed him "in administrative segregation without a hearing due solely to [his status as] an adjudicated Sexually Violent Predator." *Id.* at 3 ¶¶ 3–4. In support of this claim, Welsh asserts that when he initially arrived at the Jail on December 3, 2017, he "inform[ed] the classification officer that he was an adjudicated sex offender" and the officer placed him in general population. *Id.* at 3 ¶ 3. According to Welsh, Defendant Young then transferred him to the Special

---

[2] As a pretrial detainee, Welsh's claims arise under the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979). The Court summarizes Welsh's claims as pleaded but analyzes them under the Fourteenth Amendment.

[3] Welsh's Complaint actually alleges December 5, 2017, through January 8, 2017. Compl. 3. Based on the authenticated records and common sense, however, the Court interprets Welsh's allegations to cover December 5, 2017, through January 8, 2018.

Housing Unit (SHU) "based on [Young's] personal animus" and "to punish [Welsh] for his past crimes." *Id.* at 3 ¶ 4. The entirety of Welsh's allegations and Complaint stem from either the decision to place him in the SHU or the alleged conditions he encountered while there. *See generally id.* at 12–17.

Welsh admits that Defendant Young said he placed him in "solitary confinement . . . for safety and security reasons," but he claims this rationale is specious and that any legitimate "safety concerns could have been met in an alternative less harsh method by placing [him] with other sex offenders." Questionnaire 2, ECF No. 19; Compl. 4 ¶ 4. He further avers that Defendant Jenkins did not review his SHU placement after "15 days as [Texas Department of Criminal Justice] policy dictates." Compl. 4 ¶ 5. Authenticated records show that Defendant Young reviewed Welsh's SHU placement on December 17, 2017, and January 2, 2018. Welsh denies this, however, alleging he would have no knowledge of Young's actions: "How would I know if he reviewed the [s]tatus of me being an SVP or not. I was not provided notice." Questionnaire 3. He claims that Defendants Young and Jenkins violated his Fourteenth Amendment procedural and substantive due process rights. Compl. 12–13 ¶¶ 13–14; Questionnaire 4–7. Welsh alleges that his SHU placement "caus[ed] him severe depression and anxiety [and gave] him the feeling of helplessness and hopelessness." Compl. 5 ¶ 5.

### 2. Showers and Clothing

Welsh contends that while in the Jail his living conditions fell "below civilized decency." *Id.* at 5 ¶ 6. Specifically, Welsh claims that his shower was "nasty," the cleaning supplies were "not adequate to eliminate the filth," he had to "wear the same clothing for four days" in a row, and that Defendants did not provide him with "a set of under garments e.g. boxer shorts." *Id.* at 5–7. Welsh alleges that Defendants Payne and Jenkins violated his Fourteenth Amendment

substantive due process rights, procedural due process rights, right to equal protection, right not to be punished by unusual means, and his "Fourth and Fourteenth Amendment right to privacy as [he] was forced to strip naked every time [he] wanted to change [his] cloths [sic] in the full view of another officer." *Id.* at 13–14 ¶¶ 15–16; Questionnaire 10–11. Welsh avers that his living conditions "caus[ed] him severe depression and anxiety [and gave] him the feeling of helplessness and hopelessness and further den[ied] him the dignity of a human." Compl. 7 ¶ 7.

### 3. Hot Food

Welsh claims that Defendants McDaniel and Unknown Officer "were deliberately indifferent to [his] needs for a hot meal." *Id.* at 9 ¶ 10. He asserts he "was feed [sic] as cheaply as possible and very little of it."[4] Questionnaire 13. Welsh says Defendants fed him "grits and cornbread[,] . . . cornbread and white gravy[,] . . . chill [sic] and cornbread[,] . . . sausage roll and cornbread, or a casserole dish and cornbread." *Id.* He claims Defendants "force[d] [him] to eat cold food" in violation of his "Fourteenth Amendment Substantive Due Process Rights to be free from punishment" and his right "not to be punished by unusual means." *Id.* at 7–8 ¶ 8; Questionnaire 13. Welsh avers that this "caus[ed] him severe depression and anxiety [and gave] him the feeling of helplessness and hopelessness and further den[ied] him the dignity of a human." Compl. 8 ¶ 8.

### 4. Recreation and Phone Time

Welsh asserts that he was entitled to one hour of recreation time per day, but Defendant Payne only allowed him twenty minutes of recreation time three days per week. *Id.* at 9 ¶ 10. According to Welsh, "the Texas Jail Commission Standards under Texas Administration [sic]

---

[4] Welsh also asserts in passing that Defendants "inflate the commissary prices so high you cant [sic] even feed yourself." Questionnaire 13. He does not, however, raise a claim related to purported high commissary prices because he "thought it better served in another litigation." *Id.*

Code 271.1(12)" provides him a "[s]tate [c]reated [l]iberty [i]nterest" to recreation time. *Id.*; Questionnaire 16–17. He claims that Defendant Payne was deliberately indifferent to his Fourteenth Amendment procedural and substantive due process rights, right to equal protection, and right "not to be punished in an unusual manner." Compl. 9–10 ¶ 10; Questionnaire 16–17. Welsh avers that the lack of recreation time "caus[ed] him severe depression and anxiety [and gave] him the feeling of helplessness and hopelessness." Compl. 10 ¶ 10.

### 5. Access to News and Information

Welsh contends that Defendants Payne, McDaniel, and Unknown Officer deprived him of "phone time, association [with his family], and knowledge and information because of no TV or radio in the SHU." *Id.* at 8, 15–16 ¶¶ 9, 19, 21; Questionnaire 4, 17. He claims he "had no access to the information and knowledge of the world" and that he lost "the right to be informed" and "the right to entertainment." Questionnaire 14. He further claims that Defendants "wouldn't allow [him] to stay on the phone for longer than 20 [minutes] for no reason," which "plac[ed] a chilling effect on [his] right to associate with [his] family]." *Id.* at 17. Welsh asserts that Defendants were "deliberately indifferent to his First Amendment Rights to news and information," and that Defendants violated his Fourteenth Amendment procedural and substantive due process rights, as well as his right to equal protection. Compl. 8, 15–16 ¶¶ 9, 19, 21; Questionnaire 15. Welsh avers that Defendants' actions "caus[ed] [him] the harm of severe sensory deprivation and isolation," which caused "him severe depression and anxiety [and gave] him the feeling of helplessness and hopelessness." Compl. 9 ¶ 9.

### 6. Claims Against Lubbock County

Welsh generally attributes each of the above allegations to Lubbock County, through its official policy makers Defendants Rowe and Scott, claiming that it (1) failed to train and supervise

and (2) was "deliberately indifferent" to his constitutional rights by implementing the policies, practices or customs that allowed the violations. *Id.* at 10–11, 16–17 ¶¶ 11–12, 22–23; Questionnaire 19–28.[5]

**B. The District Judge should dismiss Welsh's procedural due process claim against Defendant Jenkins based on his Special Housing Unit placement but should require Defendant Young to answer.**

Welsh alleges that between December 5, 2017, and January 8, 2018, Defendant Young placed him "in administrative segregation without a hearing due solely to [his status as] an adjudicated Sexually Violent Predator." Compl. 3 ¶ 4. He further contends that Defendant Jenkins did not review his SHU placement after "15 days as [Texas Department of Criminal Justice] policy dictates." *Id.* at 4 ¶ 5. Welsh claims Defendants violated his Fourteenth Amendment procedural and substantive due process rights. *Id.* at 12–13 ¶¶ 13–14; Questionnaire 4–7.

Initially the Court notes that Welsh alleges procedural and substantive due process violations throughout his Complaint and questionnaire response; however, all claims arise from his SHU placement. Thus, the Court first addresses the alleged procedural due process violation by virtue of his SHU placement without a hearing, and then the claimed substantive due process violations arising from the conditions of confinement Welsh purportedly experienced, as asserted in the remainder of his Complaint. *See infra*, Sections II.B–G.

As a pretrial detainee, Welsh's claims are governed by the Fourteenth Amendment, which prohibits punishment without due process of law. *Bell*, 441 U.S. at 535–37; *see also Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (explaining that a pretrial detainee's rights "flow from

---

[5] Initially, Welsh claimed Defendants Rowe and Scott failed to train Defendants Payne, Young, McDaniel, Unknown Officer, and Jenkins in connection with SHU placement, living conditions, and food claims. Compl. 10 ¶ 11. He alleged that Defendants Rowe and Scott were deliberately indifferent by instituting policies, practices, or customs in connection with his SHU placement, recreation, news and information, and clothing claims. *Id.* at 11 ¶ 12. In his questionnaire, however, he changed his complaint to incorporate both the failure to train and policy claims as to each individual allegation. *See* Questionnaire 19–24, 26–28.

both the procedural and substantive due process guarantees of the Fourteenth Amendment"); *Cupit v. Jones*, 835 F.2d 82, 84 (5th Cir. 1987) (confirming that convicted prisoner's rights derive from the Eighth Amendment). "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Before imposing punishment, a detainee is entitled to certain procedural protections. *Wolff v. McDonnell*, 418 U.S. 539, 563–66 (1974).

Welsh alleges that Defendant Young violated his procedural due process rights by placing him "in administrative segregation without a hearing due solely to [his status as] an adjudicated Sexually Violent Predator." Compl. 3 ¶ 4. Authenticated records indicate Defendant Young placed Welsh in the SHU for "the safety and security of inmates and staff." Welsh corroborates that this was Defendant's stated purpose, but impliedly, if not overtly, claims that this reasoning was merely a pretext for punishment. Questionnaire 2 (alleging Defendant Young told him it was for safety and security but "when I asked him to elaborate on how I had presented a safety and security risk he could not answer"); (contending Defendant Young said "they don't go by the [C]onstitution they go by the Jail Commission Standards" and that "he did not have to [place him in SHU] that he just wanted too [sic]"). Welsh also asserts that Defendant's "safety concerns could have been met in an alternative less harsh method by placing [him] with other sex offenders." Questionnaire 2; Compl. 4 ¶ 4. He reiterates that the underlying reason Defendant placed him in the SHU was "to punish [him] for his past crimes." Compl. 3 ¶ 4. Accepting Welsh's factual allegations as true (as the Court must for screening purposes), i.e., that Defendant arbitrarily punished Welsh via the housing placement, with no hearing or legitimate justification, the Court finds that Welsh has stated sufficient facts to survive screening and recommends that the District

Judge require Defendant Young to file a responsive pleading with respect to this claim. *See, e.g.*, *Pembroke v. Wood Cty.*, 981 F.2d 225, 229 (5th Cir. 1993) (explaining that the "use of punitive isolation without affording due process is unacceptable and violates the 14th Amendment"); *Jones v. Brown*, 300 F. Supp. 2d 674, 678–79 (N.D. Ind. 2003) (finding detainee's claim that defendants placed him in segregation without a hearing survived screening).

Welsh also claims that Defendant Jenkins violated his procedural due process rights by failing to review his SHU placement after "15 days as [Texas Department of Criminal Justice] policy dictates." Compl. 4 ¶ 5. Welsh's claim against Defendant Jenkins fails because he alleges that he was entitled to placement review every 15 days under TDCJ policy—not the Constitution. *Id.* Violations of jail policy or state law, standing alone, cannot form the basis of a § 1983 claim. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (jail policy); *Giovanni v. Lynn*, 48 F.3d 908, 912–13 (5th Cir. 1995) (state law); *see also Cruz v. Forrest*, 350 F. App'x 900, 901 (5th Cir. 2009) ("[Inmate's] assertions that state prison rules were broken in connection with his placement in administrative segregation do not state a constitutional claim."). This is because "a prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers*, 97 F.3d at 94. Not only was Welsh *not* confined within the TDCJ system (Welsh was held in the Lubbock County Jail), but authenticated records refute Welsh's claim that Defendant Jenkins violated the TDCJ policy: Defendant Jenkins reviewed Welsh's placement on December 17, 2017, and on January 2, 2018. For these reasons, Welsh's procedural due process claim against Defendant Jenkins should be dismissed.

**C. Welsh has not stated a cognizable constitutional claim based on his living conditions, i.e., the shower facilities and his clothing.**

Welsh alleges that his living conditions fell "below civilized decency" while in the SHU. Compl. 5 ¶ 6. He asserts his shower was moldy, the cleaning supplies Defendants provided were inadequate, he had one set of clothing for four days at a time, Defendants deterred him from washing his clothing before official laundry days, and Defendants did not give him undergarments. *Id.* 5–7 ¶¶ 6–7. Based on these allegations, Welsh avers Defendants Payne and Jenkins violated his Fourteenth Amendment substantive and procedural due process rights, right to equal protection, right not to be punished by unusual means,[6] and his Fourth and Fourteenth Amendment right to privacy. *Id.* 13–14 ¶¶ 15–16; Questionnaire 10–11.

1. *Shower Conditions*

Welsh claims Defendants violated his substantive due process rights by subjecting him to unconstitutional living conditions. Questionnaire 9; *see also* Compl. 5 ¶ 6. The Constitution "prohibits the imposition of conditions of confinement on pretrial detainees that constitute 'punishment.'" *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996) (citing *Bell*, 441 U.S. at 535). Nevertheless, de minimis restrictions do not amount to punishment, no matter Defendants' intent. *See Bell*, 441 U.S. at 539 & n.21 (defining "punishment" to include "arbitrary or purposeless" action but noting that there is "a de minimis level of imposition with which the Constitution is not concerned"); *Hamilton*, 74 F.3d at 106 (affirming dismissal of detainee's conditions of confinement claim, where he was subjected to a "de minimis level of imposition" such that the conditions did not amount to punishment).

---

[6] The Court interprets this as Welsh attempting to assert an Eighth Amendment claim. As a pretrial detainee, however, Welsh's claim is governed by the Fourteenth Amendment. *Bell*, 441 U.S. at 535–37.

The environment Welsh claims Defendants subjected him to—an allegedly moldy shower and inadequate cleaning supplies (Compl. 5 ¶ 6)—is, at best, a de minimis annoyance that cannot amount to punishment, particularly where Welsh alleges no direct, serious harm or risk of harm as a result.[7] *See, e.g., Mahmoud v. Bowie*, No. 99-31255, 2000 WL 1568178, at *2 (5th Cir. Sept. 14, 2000) (table decision) (holding plaintiff's claim alleging unsanitary shower conditions was "conclusional or de minimis" and did not rise to the level of a constitutional violation); *Heaton v. Normand*, CIVIL ACTION NO. 17-405, 2017 WL 3268341, at *4 (E.D. La. June 22, 2017) ("[T]he jurisprudence has repeatedly held that the mere fact that mold is present in a jail does not render an inmate's confinement unconstitutional."), *R. & R. adopted by* 2017 WL 3252813 (E.D. La. July 31, 2017); *Simmons v. Gusman*, Civil Action No. 14-1907, 2015 WL 151113, at *4 (E.D. La. Jan. 12, 2015) ("[T]he mere fact that fungus, mold, mildew, and rust are present [in a jail] does not warrant relief."); *Eaton v. Magee*, Civil Action No. 2:10-cv-112-MTP, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*, No. 3:11-CV-0399-L (BK), 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (holding that allegation of "excessive amount of black mold in the showers and sinks" was nothing "more than a de minimis violation"), *R. & R. adopted by* 2011 WL 2214383 (N.D. Tex. June 7, 2011); *Reynolds v. Newcomer*, CIV. A. No. 09-1077, 2010 WL 234896, at *2, *10 (W.D. La. Jan. 19, 2010) (complaints of "the presence of black mold in living areas, eating areas, and shower areas"

---

[7] Welsh generally contends that his living conditions "caus[ed] him severe depression and anxiety [and gave] him the feeling of helplessness and hopelessness and further den[ied] him the dignity of a human." Compl. 7 ¶ 7. As noted, such conditions do not rise to the level of constitutional concern, and other than a generalized recitation of intangible mental impressions or feelings he ascribes to the alleged conditions, he pleads no facts demonstrating cognizable harm or injury. *See id.*

were found to "rise to no more than 'a *de minimis* level of imposition with which the Constitution is not concerned'" (citing *Bell*, 441 U.S. at 539 n.21)).

To the extent that Welsh challenges the adequacy of the Jail's cleaning supplies, he similarly fails to state a constitutional claim. "Prisoners simply are not entitled to the cleaning supplies of their choice." *Thomas v. Gusman*, Civil Action No. 11–1424, 2012 WL 607970, at *4 (E.D. La. Jan. 27, 2012), *R. & R. adopted by* 2012 WL 607698 (E.D. La. Feb. 24, 2012); *accord Sneed v. Cotton*, No. 3:11-CV-0523-M (BK), 2011 WL 1808030, at *2 (N.D. Tex. Apr. 14, 2011) (finding that detainee's complaint of inadequate cleaning supplies is a de minimis harm), *R. & R. adopted by* 2011 WL 1827463 (N.D. Tex. May 10, 2011); *Tallmore v. Hebert*, Civil Action No. 07–1220, 2008 WL 2597939, at *3 (W.D. La. May 28, 2008) ("There is simply no constitutional requirement that any specific type of disinfectant be used by prison officials."). While the shower may not have been as clean as Welsh preferred, "jails must provide only reasonably adequate hygiene and sanitation conditions." *Burton v. Cameron Cty.*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir. 1986)); *accord Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004).

Thus, Welsh's "allegations, even if accepted as true, fail to cross the impermissible line that separates the unpleasant from the unconstitutional." *Ruffin v. Larpenter*, CIVIL ACTION No. 19-10378, 2019 WL 2526739, at *3 (E.D. La. May 28, 2019) (dismissing pretrial detainee's claim that mold in shower constituted unconstitutional punishment), *R. & R. adopted by* 2019 WL 2524582 (E.D. La. June 19, 2019).

2. *Clothing*

Welsh next claims Defendants violated his substantive and procedural due process rights, right to equal protection, and right to privacy under the Fourth Amendment, when they provided Welsh with one set of clothing and no undergarments. Questionnaire 10–12.

As stated above, the Constitution prohibits the imposition of conditions of confinement that constitute punishment. *Hamilton*, 74 F.3d at 103. Conditions or restrictions that are reasonably related "to a legitimate governmental objective," however, are not punitive. *Bell*, 441 U.S. at 539. Similarly, neither do de minimis restrictions qualify as punishment. *See id.* at 539 & n.21.

The Constitution requires that jails provide "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *see also Hare*, 74 F.3d at 639. Therefore, jail officials may not deprive an inmate of clothing. *See LaFontaine v. Mail Room Employees*, No. Civ.A. 501CV220C, 2004 WL 1380521, at *4 (N.D. Tex. June 21, 2004*)*. An inmate, however, "is not entitled to the clothing of his choice." *Pea v. Edwards*, Civil Action No. 14-1764, 2015 WL 4661646, at *16 (E.D. La. Aug. 5, 2015) (quoting *Knop v. Johnson*, 667 F. Supp. 467, 475 (W.D. Mich. 1987)). Nor is an inmate entitled to free undergarments. *Rue v. Gusman*, Civil Action No. 09-6480, 2010 WL 1930936, at *8 (E.D. La. May 11, 2010) (citing *Mayer v. Pima Cty. Sheriff Dep't*, No. 92-15584, 1993 WL 230196, at *3 (9th Cir. June 28, 1993)). Here, Welsh "does not allege that he has no clothing; rather, he merely objects to the fact that he should have to pay for undergarments" and "the Constitution simply does not require that inmates be provided with free undergarments." *Thomas*, 2012 WL 607970, at *6. The fact that Defendants did not provide Welsh with free underwear or multiple sets of clothing does not rise to a constitutional violation. Authenticated

13

records indicate that Welsh could have purchased underwear if he desired and that Welsh received

a clean set of clothing twice per week. *See* Compl. 6 (Welsh stating that the Jail exchanged his

clothing every Monday and Thursday). Consequently, any alleged infringement is a de minimis

restriction and does not constitute punishment under the Fourteenth Amendment.

To the extent Welsh claims Defendants violated his right to equal protection by providing

him with one set of clothing, his claim similarly fails. To establish a violation of his right to equal

protection, Welsh "must show that he was intentionally treated differently from other similarly

situated inmates and that there is no rational basis for the difference in treatment." *Bonner v.

Alford*, No. 3:10-CV-2556-N (BF), 2014 WL 285139, at *8 (N.D. Tex. Jan. 27, 2014), *aff'd*, 594

F. App'x 266 (5th Cir. 2015); *see also Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001).

"Discriminatory purpose in an equal protection context implies that the decisionmaker selected a

particular course of action at least in part because of, and not simply in spite of, the adverse impact

it would have on an identifiable group." *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir.

1992). Here, Welsh claims that "other inmates not housed in SHU where [sic] allowed two sets

of clothing," which means that Welsh alleges he received different treatment from individuals *not*

similarly situated. Questionnaire 10; *see Bonner*, 2014 WL 285139, at *8 (rejecting prisoner's

claim that administrative segregation violated his right to equal protection because "the summary

judgment evidence fail[ed] to show that any other inmate was similarly situated to and treated

differently than Plaintiff").

Neither does Welsh demonstrate that Defendants acted with a discriminatory purpose or

that he is a member of a protected class. *See Bonner*, 2014 WL 285139, at *8 (rejecting prisoner's

claim that administrative segregation violated his right to equal protection because he "fail[ed] to

identify any evidence that he is a member of a protected class or that Defendants intentionally

discriminated against him"). SVPs do not constitute a protected class. *See e.g., Grohs v. Fratalone*, Civ. No. 137870KMMAIL, 2015 WL 6122147, at *5 (D.N.J. Oct. 16, 2015) ("Persons designated as sexually violent predators are not a protected class."); *see also Allen v. Mayberg*, No. 1:06-CV-01801-BLW-LMB, 2013 WL 3992016, at *7 (E.D. Cal. Aug. 1, 2013) (stating that "SVPs are not a suspect or quasi-suspect class for Equal Protection purposes"); *Hawkins v. Ahlin*, No. 12–0626, 2013 WL 3475187, at *6 n.7 (C.D. Cal. July 10, 2013) (noting the law does not support a finding that civilly committed SVPs qualify for protection as a protected class).[8]

Further, Welsh's conclusory allegation that Defendants acted with a discriminatory purpose does not establish a violation of his constitutional rights. *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir. 2005) (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims); *Shackelford v. State Bar of Tex.*, No. 3:19-CV-1075-M-BN, 2019 WL 4418277, at *3 (N.D. Tex. Aug. 20, 2019) (stating that "while a court must accept all of a plaintiff's allegations as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation'"), *R. & R. adopted by* 2019 WL 4413288 (N.D. Tex. Sept. 16, 2019). Welsh's equal protection claim therefore falls short.

Finally, Welsh also contends that Defendants' refusal to provide free underwear violated his Fourth Amendment right to privacy because he "had to strip naked in front of another officer to change cloths [sic] where [he] could have covered [his] shame with undergarments." Questionnaire 11–12. As stated above, however, Welsh has no Constitutional right to free underwear. *Rue*, 2010 WL 1930936, at *8. Welsh chose to not purchase underwear and by his

---

[8] A suspect class is a minority class which has been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973). Such classifications include race and national origin. *Castaneda v. Partida*, 430 U.S. 482, 500 (1977); *McLaughlin v. Florida*, 379 U.S. 184, 192 (1964). Fundamental rights stem from the Constitution itself (*Rodriguez*, 411 U.S. at 33–34), and include the right to marry (*Loving v. Virginia*, 388 U.S. 1, 12 (1967)), have children (*Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541 (1942)), and vote (*Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986)).

own volition had no undergarments when he had to undress. Accordingly, Defendants did not violate his right to privacy under the Fourth Amendment.

The Court therefore recommends dismissal of Welsh's claims stemming from Defendants' failure to provide multiple sets of clothing and free undergarments.

### D. The purported lack of hot food does not rise to the level of a constitutional violation.

Welsh claims that the "living conditions in the Lubbock County jail [fell] below civilized decency" and that Defendants McDaniel and Unknown Officer "were deliberately indifferent to [his] needs for a hot meal" and "force[d] [him] to eat cold food" in violation of his substantive due process rights under the Fourteenth Amendment. Compl. 7–8 ¶ 8; Questionnaire 13.

While the Constitution requires that detainees receive "reasonably adequate" food, *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988) (citation omitted), Welsh has pleaded no facts showing that the meals he received were nutritionally or otherwise constitutionally inadequate or improper. *See Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977) ("A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required."). "Moreover, the fact that food was served cold or at improper temperatures does not rise to a constitutional deprivation." *McGarrah v. Kimbrow*, No. 3:14-CV-2088-B-BK, 2015 WL 105228, at *5 (N.D. Tex. Jan. 6, 2015). Thus, accepting his claim as true, cold or unappetizing food is not a violation of Welsh's constitutional rights.

To the extent that Welsh complains about the serving size of the Jail's food, he has also failed to raise a constitutional violation. The Constitution does not require that plaintiff receive particular amounts of food. *Green v. Ferrell*, 801 F.2d 765, 770–71 (5th Cir. 1986) (setting aside magistrate's order requiring jail to serve three meals per day). Further, "inmates cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235

(7th Cir. 1988). "Even on a regular, permanent basis, two meals a day may be adequate." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). Welsh does not assert that Defendants served any less than three meals per day.

Welsh also alleges no facts demonstrating that Defendants acted with deliberate indifference. To establish deliberate indifference, a plaintiff must show that the defendant "knows of and disregards an excessive risk to inmate health or safety." *Hare*, 74 F.3d at 647–48.. Deliberate indifference must rely on facts clearly showing "obduracy and wantonness, not inadvertence or error in good faith." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Wantonness includes "reckless disregard of the rights of others" or "the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril." *Smith v. Wade*, 461 U.S. 30, 39 n.8 (1983) (citation omitted). Welsh merely states that Defendants acted with deliberate indifference but provides no specific acts attributable to Defendants McDaniel, Unknown Officer, or Lubbock County. Compl. 7–8 ¶ 8. Where Welsh does not plead facts suggesting that Defendants knew of an identifiable substantial risk to his health or safety, his claim must be dismissed. *See Perez*, 350 F. App'x at 961. Welsh's vague and conclusory allegations wholly fail to establish a violation of his constitutional rights. *See Sias*, 146 F. App'x at 720.

The undersigned therefore recommends dismissal of Welsh's claim that Defendants violated his substantive due process rights by serving cold food.

### E. Welsh's claim that his limited recreation and phone time violated his constitutional rights should be dismissed.

Welsh asserts Defendant Payne was deliberately indifferent to his rights by limiting his recreation and phone time in violation of his Fourteenth Amendment rights to substantive due process, equal protection, and "First Amendment right to associate with [his] family." Compl. 9–

10 ¶ 10; Questionnaire 16–17. The Court interprets these allegations as challenging his conditions of confinement. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (categorizing complaints about "television or mail privileges" as conditions of confinement claims).

As noted above, a constitutional violation for conditions of confinement exists only where a court finds that the conditions are not reasonably related to a legitimate, non-punitive governmental objective. *Hare*, 74 F.3d at 639. Further, "complaints that essentially allege that prison officials have interfered with a detainee's desire to live more comfortably . . . do not allege a constitutional violation and are properly dismissed as frivolous." *McGarrah v. Williams*, No. 3:14-CV-1119-M, 2014 WL 4696015, at *2 (N.D. Tex. Sept. 18, 2014) (citing *Joseph v. Barthelemy*, 95 F.3d 53, 1996 WL 460003, at *2 (5th Cir. July 30, 1996) (table decision)).

No constitutional right exists for a particular quantity of recreation time. *See Smith v. Cockrell*, No. 2:02-CV-0305, 2003 WL 22076476, at *3 (N.D. Tex. May 1, 2003) (dismissing as frivolous plaintiff's claim that "he has a right to a certain amount of 'dayroom recreation time'"); *see also White v. Simpson*, No. 3-04-CV-0728-D, 2004 WL 2049306, at *4 (N.D. Tex. Sept. 13, 2004) (finding no constitutional violation where plaintiff "was denied access to the recreation yard" during the first six weeks of his incarceration and thereafter "received only 15 to 30 minutes of recreation per day instead of two hours as mandated by TDCJ policy").

Moreover, Welsh's claim that "the Texas Jail Commission Standards under Texas Administrati[ve] Code 271.1(12)" give him a "[s]tate [c]reated [l]iberty [i]nterest" to recreation time is without merit. Compl. 9 ¶ 10; Questionnaire 16–17. Violations of state law and jail policy in and of themselves cannot form the basis of a § 1983 claim. *Myers*, 97 F.3d at 94 (jail policy); *Giovanni*, 48 F.3d at 912–13 (state law).

Even assuming a Constitutional right exists, Welsh pleads no facts establishing deliberate indifference. To demonstrate deliberate indifference, Welsh must allege facts showing that Defendant "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Hare*, 74 F.3d at 648. Welsh merely states that Defendant acted with deliberate indifference but fails to provide any specific acts establishing the required *mens rea*. Compl. 9–10 ¶ 10. Welsh's vague and conclusory allegations wholly fail to establish a violation of his constitutional rights. *See Sias*, 146 F. App'x at 720.

To the extent Welsh claims that limited phone time restricted his ability to contact family, in violation of the First Amendment, he has likewise failed to state a claim because there is no constitutional right to telephone access. *See Hamilton*, 74 F.3d at 106 (pretrial detainee's denial of telephone access did not "give rise to a constitutional claim"). "[L]awful incarceration results in the necessary limitation of many privileges and rights of the ordinary citizen." *Hill v. Estelle*, 537 F.2d 214, 215 (5th Cir. 1976). "Prisoners have no right to unlimited telephone use. Instead, a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution." *Young v. LeBlanc*, CIVIL ACTION NO. 19-13516, 2020 WL 3421132, at *20 (E.D. La. May 7, 2020) (internal quotation marks omitted), *R. & R. adopted by* 2020 WL 3415800 (E.D. La. June 22, 2020). "Prisons legitimately impose a variety of restrictions on inmates' use of telephones." *Id.* (quoting *Roy v. Stanley*, No. Civ. 02-CV-555-JD, 2005 WL 2290276, at *7 (D.N.H. Sept. 20, 2005)). Moreover, Welsh does not claim that the limited phone time deprived him of the ability to place calls altogether. *See id.* (citing *Hill*, 537 F.2d at 215) ("Prison regulations concerning telephone use do not violate an inmate's First Amendment rights so long as the inmate does not suffer from an inability to communicate with the courts, counsel, family and friends."). To the contrary, Welsh asserts that "the S.O.B.'s wouldn't

allow [him] to stay on the phone for longer than 20 [minutes]." Questionnaire 17. The Constitution does not require that detention facilities accede to the demands of a detainee desiring to remain on the phone for a time period roughly equivalent to the duration of a commercial free sit-com.

Similarly, Welsh's claim that Defendant Payne violated his right to equal protection must also fail. He asserts that "other individuals who where [sic] housed elsewhere in [administrative segregation] where [sic] allowed one hour dayroom and at least one hour phone time." Questionnaire 17. As previously noted, to establish a claim under the Equal Protection Clause Welsh "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor*, 257 F.3d at 473. Discriminatory intent implies that the actor was at least partially motivated by "the adverse impact it would have on an identifiable group." *Galloway*, 951 F.2d at 65. "Unless fundamental rights or suspect classifications are involved . . . , different classifications of inmates under state law will not violate equal protection standards as long as they bear a rational relationship to some legitimate state purpose." *Armon v. Jones*, 580 F. Supp. 917, 926 (N.D. Tex. 1983). Welsh's allegation that other inmates in the SHU received more recreation time does not rise to a violation of his equal protection rights because neither "fundamental rights" nor "suspect classifications" are involved. Nor has Welsh provided any facts showing that Defendant Payne acted with a discriminatory purpose. *See Sias*, 146 F. App'x at 720 (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims). Welsh's allegations, taken as true, do not establish that Defendant Payne violated Welsh's right to equal protection. *Id.*

The undersigned recommends that the District Judge dismiss Welsh's recreation claims because Defendant Payne did not violate Welsh's Fourteenth or First Amendment rights.

**F. The District Judge should dismiss Welsh's claims based on the lack of access to news and information.**

Welsh claims Defendants Payne, McDaniel, and Unknown Officer were deliberately indifferent and deprived him of "knowledge and information because of no TV or radio in the SHU" in violation of his substantive due process rights, right to equal protection, and his First Amendment right to "news and information." Compl. 8, 15–16 ¶¶ 9, 19, 21; Questionnaire 4, 17.

"In evaluating the constitutionality of conditions or restrictions of pretrial detention . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell*, 441 U.S. at 535. "[A] condition is not tantamount to punishment merely because it interferes with a detainee's desire to live more comfortably." *Joseph*, 1996 WL 460003, at *2. Moreover, an inmate "does not retain constitutional rights that are inconsistent with the legitimate penological objectives of the correction system." *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990).

Welsh's vague and conclusory allegations fail to establish a violation of First Amendment rights. *See Sias*, 146 F. App'x at 720. Merely because Welsh claims he has a First Amendment right to television and radio does not make it so. *See Cooper v. Bowles*, No. CIV. A.3:91-CV-2622-D, 1997 WL 361879, at *2 (N.D. Tex. June 20, 1997) ("There is no constitutional right to radio or television in jail."). In addition, Defendants did not violate his substantive due process rights because any violation is de minimis and thus cannot amount to punishment—especially where Welsh alleges no tangible, serious harm.[9] *See, e.g.*, *Mahmoud*, 2000 WL 1568178, at *2 (providing that conclusional and/or de minimis violations do not rise to the level of a constitutional violation).

---

[9] Welsh generally contends that the lack of entertainment "caus[ed] [him] the harm of severe sensory deprivation and isolation," which caused "him severe depression and anxiety [and gave] him the feeling of helplessness and hopelessness." Compl. 9 ¶ 9. As noted, such conditions do not rise to the level of constitutional concern, and other than a generalized recitation of intangible mental impressions or feelings he ascribes to the alleged deprivation, he pleads no facts demonstrating cognizable harm or injury. *See id.*

Welsh's deliberate indifference claim also fails. His assertions do claim that Defendants acted with deliberate indifference because he does not allege facts showing that Defendants "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Hare*, 74 F.3d at 648. Welsh merely states that Defendants acted with deliberate indifference, but he cites no specific acts establishing such conduct. Compl. 8 ¶ 9. Welsh's vague and conclusory allegations do not establish a violation of his constitutional rights. *See Sias*, 146 F. App'x at 720.

Similarly, Welsh's equal protection claim falls short. Welsh's claim does not rise to a constitutional violation because there is no right to television or radio in jail. *See Cooper*, 1997 WL 361879, at *2. Further, he does not claim that he was treated differently from other similarly situated pretrial detainees (*see Taylor*, 257 F.3d at 473)—rather, he complains that "[e]very prisoner other than those housed in SHU had access to the [t]elevision." Questionnaire 15. Neither does Welsh plead facts showing that he is a member of a protected class or that Defendants acted with a discriminatory purpose. *See Bonner*, 2014 WL 285139, at *8 (rejecting prisoner's claim that administrative segregation violated his right to equal protection because he "fail[ed] to identify any evidence that he is a member of a protected class or that Defendants intentionally discriminated against him"); *see also Sias*, 146 F. App'x at 720 (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims). Welsh's allegations, taken as true, do not establish that Defendants Payne, McDaniel, and Unknown Officer violated Welsh's right to equal protection.

Thus, Welsh's limited access to television and radio did not violate his rights and the Court recommends dismissal of these claims.

**G. Welsh's claims against Lubbock County fail.**

Welsh generally attributes each of the above allegations to Lubbock County, through its policy makers Defendants Rowe and Scott, by (1) failing to train and supervise and (2) being "deliberately indifferent" to his constitutional rights by implementing the policies, practices or customs that allowed the violations. Compl. 10–11, 16–17 ¶¶ 11–12, 22–23; Questionnaire 19–28. The undersigned recommends that the District Judge dismiss all claims against Lubbock County.

First, Welsh attempts to hold Lubbock County vicariously liable for the actions of its employees through the guise of a failure to train claim. *See* Questionnaire 19–25. For this reason alone, his claims should be dismissed. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (explaining that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). To succeed on a claim against Lubbock County, Welsh must show either that Defendants Rowe and/or Scott were personally involved, or that there is a sufficient causal link between their conduct and the alleged violation. *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006). Welsh does not claim that either policy maker was personally involved in any alleged violation; therefore, the Court analyzes his claims under the latter standard.

A plaintiff must provide proof of three elements to establish a claim under § 1983 for failure to train or supervise: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Welsh does not establish any of these elements. Rather, when asked to specify the basis for his allegation, he stated, "How else would so many constitutional violations happen at the same time unless it was

a failure to train or it was the policy of the Lubbock County jail." Questionnaire 25. Consequently, even if Welsh's allegations rose to the level of a constitutional violation, Welsh still does not establish the required elements because he provides no support for his claims. *See Sias*, 146 F. App'x at 720. The undersigned therefore recommends dismissal of the failure to train claims.

Welsh's policy claims should likewise be dismissed. "To establish a county's liability on a § 1983 claim, a plaintiff must show the County had some inadequate custom or policy that acted as the moving force behind a constitutional violation." *Forgan v. Howard Cty.*, 494 F.3d 518, 522 (5th Cir. 2007) (citing *Monell*, 436 U.S. at 690–91). Thus, a plaintiff must allege an underlying constitutional violation as a necessary prerequisite to pleading a successful municipal liability claim. *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017). Welsh has not pleaded facts showing any underlying constitutional violation. With respect to the single surviving underlying claim, the alleged procedural due process violation, Welsh's policy claim still fails because he merely conclusorily states that "[i]ts [sic] what the Counties [sic] policy makers the Sheriff and the Chief Administrator wanted" and "[t]he clearest proof that it is a policy practice or custom of the County is because of the grievances." Questionnaire 28; *see Sias*, 146 F. App'x at 720 (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims). Similarly, Welsh largely has not demonstrated that Defendants acted with deliberate indifference. *See Farmer*, 511 U.S. at 837 (defining deliberate indifference); *see also Sias*, 146 F. App'x at 720. The Court therefore recommends dismissal of Welsh's policy claims against Lubbock County.

### III.    Recommendation

For these reasons, the undersigned recommends that the United States District Court dismiss with prejudice all claims asserted against: (1) Defendant Jenkins related to Welsh's placement in the SHU; (2) Lubbock County; and (3) all Defendants related to (a) shower conditions

and clothing; (b) cold food; (c) limited recreation time; and (d) the lack of access to television and radio, and limited phone time.

The only claim remaining is that against Defendant Young for a procedural due process violation arising from Welsh's alleged SHU placement without a hearing. Accepting Welsh's allegations as true, the undersigned finds the claim survives preliminary screening and recommends that the United States District Court order Defendant Young to answer or otherwise plead to the claim.

## IV.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September 30, 2020.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE