UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

LONNIE KADE WELSH,
Institutional ID No. 27818

      Plaintiff,

v.

LUBBOCK COUNTY, *et al.*,

      Defendants.

No. 5:19-CV-00255-H

**ORDER ACCEPTING THE FINDINGS, CONCLUSIONS, AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

This lawsuit arises out of Plaintiff's short-term, pretrial confinement in the Lubbock County Detention Center (LCDC). Plaintiff sued eight Defendants alleging a variety of constitutional violations under 42 U.S.C. § 1983. He seeks monetary damages.

United States Magistrate Judge D. Gordon Bryant made findings, conclusions, and a recommendation (FCR) in this case. (Dkt. No. 20.) Judge Bryant recommended that the Court dismiss all but one of Plaintiff's claims with prejudice for failure to state a claim. Specifically, Judge Bryant recommended that only Plaintiff's claim against Defendant Sergeant K. Young, in his individual capacity, should proceed through the course of litigation—that is, that the Court should require Defendant Young to answer or otherwise plead to Plaintiff's claim for a procedural due process violation arising from Plaintiff's placement in administrative segregation[1] without a hearing. Plaintiff filed objections. (Dkt. No. 23.[2])

---

[1] Referred to as "SHU" (for Special Housing Unit) in the FCR.

[2] Page references to this document refer to the page number assigned as docketed in ECF, as opposed to the page numbers handwritten by Plaintiff.

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1). In contrast, the district judge reviews any unobjected-to findings, conclusions, and recommendations for plain error. The Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Com'n*, 834 F.2d 419 (5th Cir. 1987), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415 (5th Cir. 1996). The Court has examined the record and reviewed the unobjected-to portions of the FCR for plain error and, finding none, expressly accepts and adopts those portions of the Magistrate Judge's findings, conclusions, and recommendation.

Additionally, in light of Plaintiff's specific objections, the Court has conducted a de novo review of the relevant portions of the FCR and the record in this case. Many of Plaintiff's objections are either restatements of arguments made in his complaint (as supplemented by his response to the Court's questionnaire), arguments thoroughly addressed by the FCR, conclusory statements, or mere disagreements with the Magistrate Judge's wording. Thus, except as supplemented below, the Court expressly accepts and adopts the findings, conclusions, and recommendation of the United States Magistrate Judge. Plaintiff's objections—except his objection to the omission of analysis regarding his claim that he was deprived of access to newspapers—are overruled.

1.   **Plaintiff's Claims**

Plaintiff is an experienced and determined litigant who has filed more than a dozen federal civil actions challenging various aspects of his confinement in different institutions over the past several years. Plaintiff was a civil detainee in the Texas Civil Commitment Center when he filed this suit, proceeding pro se and *in forma pauperis*. His allegations,

however, stem from his confinement as a pretrial detainee in the Lubbock County Detention Center (LCDC) between December 4, 2017 and January 8, 2018.

He sues Lubbock County, Lubbock County Sheriff Kelly Rowe, Chief Jail Administrator C. Scott, Sergeant Payne, Sergeant K. Young, Sergeant McDaniel, Captain Ron Jenkins, and an Unknown Jail Officer (identified as Lubbock County Jail Radio Number 8281). Plaintiff sues Defendants Rowe and Scott in their individual and official capacities; all others are sued solely in their individual capacities.

Plaintiff's claims stem entirely from either the decision to place him in administrative segregation or the alleged conditions he encountered while there. Plaintiff's claims are summarized as follows:

a. Defendant Young impermissibly punished Plaintiff by placing him in administrative segregation without a hearing based solely on his status as an adjudicated Sexually Violent Predator (SVP)—and ostensibly Young's personal animus toward Plaintiff—in violation of his rights to substantive and procedural due process;

b. Defendant Jenkins failed to provide him notice and a hearing regarding a review of his administrative segregation placement after 15 days in violation of his procedural due process rights;

c. Defendants Jenkins and Payne were deliberately indifferent to unconstitutionally unsanitary conditions of his confinement in administrative segregation, including (1) a cell that had mold growing on the shower (for which he was provided inadequate cleaning supplies), (2) provision of only one set of clothing at a time (exchanged on Mondays and Thursdays), and (3) failure to provide him undergarments free of charge;

d. Defendants McDaniel and Unknown Jail Officer were deliberately indifferent to Plaintiff's need for hot meals;

e. Defendant Payne allowed him only 20 minutes of recreation, three days per week, in violation of his rights to procedural and substantive due process, equal protection, and to "not to be punished in an unusual manner;"

3

  f.  Defendants Payne, McDaniel, and Unknown Jail Officer denied him access to news and information, and limited his phone use while he was housed in administrative segregation; and

  d.  Defendant Lubbock County, through Defendants Rowe and Scott, failed to train and supervise the other Defendants, and were deliberately indifferent to his constitutional rights by implementing the policies, practices or customs that allowed the violations described in his complaint.

**2. The Magistrate Judge's Findings, Conclusions, and Recommendation**

The Magistrate Judge reviewed Plaintiff's claims as described in his complaint. Additionally, Plaintiff was permitted to supplement his complaint with responses to a questionnaire designed to allow Plaintiff a chance to further develop his claims and to assist in the judicial screening process. *See Watson v. Ault*, 525 F.3d 886, 893–94 (5th Cir. 1976). The Magistrate Judge also received and reviewed authenticated records from Lubbock County, including relevant classification and housing reports, incident reports, maintenance work order requests, laundry-exchange procedures, daily log reports, administrative grievances, call detail reports, and a medical summary with supporting medical records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995). The Magistrate Judge accepted the facts stated by Plaintiff in his complaint and answers to the questionnaire as true. However, the Court does not accept as true "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

After this screening, the Magistrate Judge recommended that only Plaintiff's procedural due process claim against Defendant K. Young should proceed through the course of litigation. The Magistrate Judge found that Plaintiff otherwise failed to state

4

viable claims and recommended that the Court dismiss Plaintiff's other claims with prejudice.

### 3. Plaintiff's Objections

Plaintiff filed handwritten objections totaling 82 pages with attachments. (Dkt. No. 23.) In his objections, Plaintiff recounts portions of the FCR and his pleadings. Plaintiff attempts to further clarify the factual basis of his claims and rehashes his claims with additional support from a variety of cases—most of which are inapposite to his claims. Plaintiff also submitted several exhibits in support of his objections including relevant grievance forms and a statement under penalty of perjury regarding the lack of undergarments. Plaintiff concluded his objections with a request for leave to amend his complaint in order to cure the deficiencies identified in the FCR.

As previously explained, the Court will only address those objections that require further discussion.

### A. Due Process and Administrative Segregation

Plaintiff claims that Defendants Young and Jenkins violated his substantive and procedural due process rights under the Fourteenth Amendment by placing him in administrative segregation without a hearing for 34 days between December 5, 2017, and January 8, 2018. Specifically, he alleges that Defendant Young placed him in administrative segregation based solely on his status as an adjudicated Sexually Violent Predator (SVP), and "to punish him for past crimes." (*See* Dkt. No. 1 at 3; Dkt. No. 19 at 3.) He also complains that Defendant Jenkins responded to his grievances regarding his

placement in administrative segregation, but he did not review Plaintiff's placement after 15 days according to Texas Department of Criminal Justice (TDCJ) policy. (Dkt. No. 1 at 4.).

Plaintiff expanded on his allegations against Young in response to the questionnaire, stating that he knew the placement was punitive because Young "came in and told [him] as much." (*See* Dkt. No. 19 at 2.) And Plaintiff specifically alleges that Young explained that "he didn't have to do any of this that he just wanted to." *Id*. The Magistrate Judge found that Plaintiff had stated sufficient facts to survive screening on his claim against Defendant Young—primarily based upon Plaintiff's allegation that Young told him he did not have to put him in administrative segregation but did it because he wanted to. (Dkt. No. 20 at 8–9.) Plaintiff did not object to this portion of the Magistrate Judge's report.

"Pretrial detainees, unlike convicts, have a liberty interest in avoiding punishment— an interest that derives from the Constitution itself." *Surprenant v. Rivas*, 424 F.3d 5, 17 (1st Cir. 2005). But not every restriction imposed during detention "amounts to punishment in the constitutional sense." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). "[T]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Hamilton v. Lyons*, 74 F.3d 99, 106 (citing *Bell*, 441 U.S. at 539 n.21). Additionally, "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Bell*, 441 U.S. at 540. Whether such a reasonable relation exists is "peculiarly within the province and professional expertise of correction officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated

6

their response to these considerations, the courts should ordinarily defer to their judgment in such matters." *Id.* at n.23 (quoting *Pell v. Procunier*, 417 U.S. 817, 827 (1974)).

Although the Court is not convinced that Young's alleged comments alone are sufficient to establish that Plaintiff's placement in administrative segregation amounted to impermissible punishment without due process (as opposed to a restraint reasonably related to the institution's interest in maintaining jail security), the Court finds that the record must be further developed on that claim. Finding no plain error, the Court accepts the Magistrate Judge's recommendation and will direct service on Defendant Young by separate order.

On the other hand, the FCR also concluded that Plaintiff failed to state a claim against Defendant Jenkins because violations of jail policy or state law, standing alone, cannot form the basis of a Section 1983 claim. (Dkt. No. 20 at 9.) And, in any event, Plaintiff was confined in the LCDC—not TDCJ—so any TDCJ requirement for reviewing housing placement every 15 days are inapplicable to Defendant Jenkins' actions. (*Id.*)

Plaintiff objected to the FCR's characterization of his claim against Jenkins as solely based on the TDCJ rules. He points out that he also alleged Jenkins violated his due process rights by failing to provide him notice and hearing related to the subsequent reviews of his placement.[3] (*See* Dkt. No. 23 at 16.) He contends that Jenkins—who answered Plaintiff's grievances about the housing classification—was clearly indifferent to the procedural requirements of the Constitution. (*See id.* at 16.) Further, Plaintiff argues that although Young caused the initial deprivation, Jenkins could have—but failed to—cure it by

---

[3] The Court notes that the FCR erroneously states that Defendant Jenkins reviewed Plaintiff's placement on those dates, but both the questionnaire and authenticated records indicate that the review was performed by Defendant Young. (*See* Dkt. No. 17 at 4; Dkt. No. 19 at 3.) Defendant Jenkins's involvement was limited to his responses to Plaintiff's grievances. But the error does not change the analysis of this claim.

7

providing him notice of his review and a hearing on his continued placement in administrative segregation. (*See id.* at 16–17.)

The Court sustains Plaintiff's objection to the FCR's omission of his supplemented claims against Jenkins but finds that it does not change the conclusion. Indeed, the Court notes that Plaintiff's claim against Defendant Jenkins was supplemented in response to the questionnaire, where the Magistrate Judge noted—based upon the authenticated records—that reviews had been completed on December 17, 2017, and January 2, 2018. (*See* Dkt. No. 17 at 2.) In his response, Plaintiff wrote "how would I know if he reviewed that status of me being an SVP or not. I was not provided notice. I was not provided a hearing. I was not allowed to speak upon my STATUS. Nor was I even provide results of his review and what factual determinations was made [all sic]." (*See* Dkt. No. 19 at 3.) Consequently, Plaintiff complains that he was unable to appeal the result under the procedures described in Texas Administrative Code 271.4. (*See id.* at 3–4.)

Plaintiff relies on *Hewitt v. Helms*, 459 U.S. 460, 476 (1983), for the proposition that he was entitled to notice and a hearing when his housing status was reviewed. (*See* Dkt. No. 23 at 16.) But the Supreme Court has abrogated *Hewitt's* methodology. *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005). And both *Wilkinson* and *Hewitt* are distinguishable from this case because they involved inmates who were in administrative segregation based on disciplinary proceedings—not for security purposes. Moreover, the Fifth Circuit has held that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim" because it "simply does not constitute a deprivation of a constitutionally cognizable liberty interest." *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) (emphasis added). While the

Fifth Circuit has not definitively identified what constitutes "extraordinary circumstances," it has concluded that such restrictions as limiting recreation time, requiring a prisoner to be handcuffed when leaving his cell, denying dessert and other limitations were not extraordinary. *See Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998); *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2013) (remanding the case because serving 30 years in lockdown might qualify as extraordinary circumstances).

But the Fifth Circuit has found that being placed in administrative segregation after being "improperly classified as a safety risk" and being denied a hearing about being placed in segregation does not implicate a liberty interest. *Huff v. Thaler*, 518 F. App'x. 311 (5th Cir. 2013) (citing *Hernandez v. Velasquez*, 522 F.3d 556, 562–64 (5th Cir. 2008)). Even in the pretrial detainee context, the Fifth Circuit accords "the widest possible deference" in classifying inmates as necessary "'to maintain security and preserve internal order.'" *Perez v. Anderson*, 350 F. App'x 959, 962 (5th Cir. 2009) (per curiam) (quoting *Hernandez* at 561 (5th Cir. 2008)).

Simply put, Plaintiff's placement in administrative segregation did not implicate any constitutionally cognizable liberty interest. Although his complaint also includes many allegations regarding the conditions of his confinement in administrative segregation, he has not shown the existence of extraordinary circumstances. In this case, plaintiff admits that he is, in fact, an adjudicated SVP. And his conclusory argument that any safety concerns could be addressed simply by housing him with other sex offenders is unpersuasive.

Finally, although the Court will order Defendant Young to answer Plaintiff's claim that the decision to place him in administrative segregation was based upon a punitive motive, Plaintiff has not alleged that Defendant Jenkins's actions—or inactions—were

similarly motivated. Jenkins responded to Plaintiff's grievances with an explanation that his placement in administrative separation was not disciplinary and did not require due process. Plaintiff has not alleged any facts to suggest that Jenkins could have, or should have, taken further action. And, as the Magistrate Judge pointed out, Plaintiff's placement was reviewed, twice, by Defendant Young. Moreover, to the extent Plaintiff's claim may be liberally construed to complain about Jenkins's handling of his grievance, the claim must also fail. Inmates do not have a federally protected liberty interest in having grievances resolved to their satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005). Thus, the Court overrules Plaintiff's objection and accepts the Magistrate's recommendation that his claim against Defendant Jenkins be dismissed for failure to state a claim.

### B. Denial of Access to Newspaper

The Magistrate Judge thoroughly analyzed Plaintiff's claims regarding his cell conditions, clothing, food quality, and restrictions on recreation and phone use, as well as denial of access to news and information via television and radio. (*See* Dkt. No. 20 at 10–22). Plaintiff's objections on those claims are overruled. But, as Plaintiff points out in his objections to the FCR, the Magistrate Judge did not address his claim that he was denied access to news and information via newspaper in violation of his First Amendment Rights. (*See* Dkt. No. 23 at 44.)

Plaintiff claims that Defendants Payne, McDaniel, and Unknown Jail Officer violated his rights while he was in administrative segregation after he informed them of his "First Amendment right to news and information by television, radio, or newspaper with no other alternative to provide for said rights." (Dkt. No. 1 at 8.) Plaintiff asserts that Payne, McDaniel, and Unknown Officer were deliberately indifferent to his First Amendment

rights, as well as his Equal Protection rights under the Fourteenth Amendment. (*See id.* at 8–9.) He expanded on his claims in response to the questionnaire, contending that his First Amendment rights were violated because having no access to the information and knowledge of the world had a "chilling effect" on his speech and ideas, that he had to guess at the state of the world, and that he lost the right to be informed and to make choices by that information or to have discourse in the social and political spheres. (*See* Dkt. No. 19 at 14.) He claims that denying him the right to news amounted to impermissible punishment under the Fourteenth Amendment. (*See* Dkt. No. 19 at 15.) And he raises Equal Protection claims, alleging that every other inmate in the LCDC—except those in administrative segregation—had access to news and information. (*See* Dkt. No. 23 at 50–52.)

Plaintiff asserts that the Defendants must establish the necessary relationship between prison security and disparate treatment of residents in administrative segregation. (*See id.* at 53.) Moreover, Plaintiff argues that he is not required to satisfy both the objective and subjective component of deliberate indifference on this claim. (*See id.*) In support of his claim, Plaintiff submitted copies of grievances complaining about the lack of access to news and information, which include responses from Defendant Payne and Unknown Officer.[4] (*See* Dkt. No. 23 at 79–80.)

The Court notes, however, that at least one of the grievances does not support Plaintiff's allegation that he was denied access to newspapers—rather, Defendant Payne responded with "Mr. Welsh, you have access to the news. You can pay for a subscription to the newspapers of your choice. We do not readily supply the newspaper, but if you pay

---

[4] The signature on the form is illegible but includes a number that Plaintiff interprets as "8281." (*See* Dkt. No. 23 at 80.) The Court notes that that grievance pertains only to the lack of television in administrative segregation.

11

for the subscription, you can receive the paper." (Dkt. No. 23 at 79.) Plaintiff has not alleged that he attempted to purchase a subscription to a newspaper—just that he was denied access to a newspaper.

Inmates have a First Amendment right to receive published materials, subject to reasonable limitations. *Pell v. Procunier*, 417 U.S. 817 (1974). The Fifth Circuit has stated that absent inconsistency with a "legitimate jail function," prisoners should not be deprived of access to newspapers and magazines. *Reimer v. Hastings*, 30 F.3d 1492 (5th Cir. July 19, 1994), citing *Mann v. Smith*, 796 F.3d 82, 83 (5th Cir. 1986). The Supreme Court has stated that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

In determining whether a regulation is reasonable, the Court looks to four factors: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether the regulation or practice allows inmates an alternative means of exercising the subject constitutional rights; (3) the impact of accommodation of the asserted right on guards, other inmates, and the allocation of resources generally; and (4) the absence of ready alternatives to the regulation. *Id.* at 89–90. Courts have struck down such regulations when they are not related to legitimate penological interests. *See e.g. Mann v. Smith*, 796 F.2d 79, 83 (5th Cir.1986) (holding that prison regulation limiting access to periodicals infringed on plaintiff's constitutional rights when defendants did not show how the regulation was related to legitimate jail function). But the Fifth Circuit noted that the Supreme Court, in *Beard v. Banks*, 548 U.S. 521 (2006), "acknowledged the particular importance of the first factor, explaining that in some cases

the second, third, and fourth factors can 'add little, one way or another, to the first factor's basic logical rationale.'" *Morgan v. Quarterman*, 570 F.3d 663, 666 (5th Cir. 2009) (quoting *Beard*, 548 U.S. at 528).

Plaintiff's allegation that he was totally denied access to news via newspaper without any alternative means is threadbare, at best, and deceptive at worst. In his pleadings, Plaintiff never alleges that he sought to purchase a subscription and the request was denied. Rather, he merely alleges that because he was in administrative segregation, he was not given access to newspapers. But his allegation is undermined by the very grievance he submits to support his claim. (*See* Dkt. No. 23 at 79.) Defendant Payne's response to his grievance does not indicate that he is prohibited access to a newspaper, either as a result of his being in administrative segregation, or because of some other policy. Just that the LCDC does not provide newspapers without prepayment.

Plaintiff's newspaper claims do not rise to the level of a constitutional violation. Arguably, the requirement of prepayment for newspaper subscriptions is rationally related to the governmental interest in controlling costs. In that case, the first *Turner* factor would be met, and the Court could find that Plaintiff has failed to state a claim. And in any event, to the extent Plaintiff complains that he was denied access to a newspaper free of charge during his month-long stay at LCDC, his claim fails because there is simply no constitutional requirement that prisons or jails provide free newspapers to inmates. *See Hall v. Phillips*, 2005 WL 3789233, at *18-21 (W.D. Ark. Dec. 14, 2005) (holding that there was no constitutional violation when the facility did not prohibit pretrial detainee from receiving or obtaining newspapers, but merely did not provide newspapers); *see also Harrison v. Myers*, 2011 WL 5024238, at *3 (D.S.C. June 24, 2011), *report and recommendation adopted*, 2011

WL 5024229 (D.S.C. Oct. 20, 2011); *see also Anderson v. Bowers*, 2020 WL 624229 (E.D. Ark. Feb. 10, 2020), *adopting* 2020 WL 625236, at *2 (no constitutional violation from one-month denial of access to a newspaper). Thus, Plaintiff's claim that he was denied access to news because he was not provided with newspapers must be dismissed for failure to state a claim.

### C. Failure to Train and Supervise and Policy Claims

Welsh's final claim alleges that Defendant Lubbock County—through its official policy makers, Defendant Sheriff Rowe and Defendant Chief Administrator Scott—violated his Constitutional rights by policy, practice, or custom. Specifically, Plaintiff asserts that each of the alleged constitutional violations happened because these Defendants (1) failed to train and supervise the other Defendants, and (2) were deliberately indifferent to his constitutional rights when they implemented the alleged policies, practices, or customs that allowed the violations to occur.

The Magistrate Judge recommended that his claims be dismissed because (1) a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory; and (2) Plaintiff has failed to show that either Rowe or Scott was personally involved in any alleged violation. (*See* Dkt. No. 20 at 23.) And, to the extent Plaintiff raises policy claims, the Magistrate Judge found no underlying constitutional violations—other than his claim against K. Young for placing him in administrative segregation without due process—thus, Plaintiff had not stated a viable policy claim. (Dkt. No. 20 at 24); *see also Hicks-Fields v. Harris Cty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017) (explaining that there cannot be municipal liability without an underlying constitutional violation.) Moreover, the Magistrate Judge concludes that even as to the surviving claim against Defendant Young, any policy claim still fails because his policy allegations are conclusory, which provide an

insufficient basis for Section 1983 claims. (*Id*. at 24.) Similarly, the FCR concludes that Plaintiff has not demonstrated that the Defendants acted with deliberate indifference. (*Id*.)

Plaintiff objects, arguing that the totality of the conditions alleged in his complaint are sufficient to state a claim against Lubbock County. (*See* Dkt. No. 23 at 54.) Moreover, Plaintiff argues that the Magistrate Judge grossly misstates the facts as to his failure to train claim. (*See id*. at 23). In particular, he relies on *Hare v. City of Corinth,* 74 F.3d 633, 644–645 (5th Cir. 1996), for the proposition that his due process claim against Defendant K. Young "begins with the assumption that it is either a policy of Lubbock County or they failed to train Defendant Young." *Id*. But *Hare* is no help to Plaintiff, because in that case, the Fifth Circuit went on to hold that deliberate indifference was the "requisite mental state" and that deliberate indifference for acts or omissions claims required a showing that the prison official had "actual knowledge of the substantial risk of [harm]." *Id*. at 648–50. Plaintiff has not alleged that Defendants Lubbock County, Rowe, or Scott had actual knowledge that Defendant Young violated his due process rights when he placed Plaintiff in administrative segregation, or that he would suffer some harm as a result. Indeed, the Court notes that Plaintiff alleges that Defendant Young's decision to place him there was based on personal animus, even telling Plaintiff he didn't have to place him there, but he did it because he wanted to. (*See* Dkt. No. 19 at 2.) Plaintiff admits that he did not allege personal involvement on the part of Defendants Lubbock County, Rowe, or Scott, but argues that the responses to his grievances are sufficient to demonstrate that they failed to train the involved officers. (*See* Dkt. No. 23 at 59.) But again, as the Court has found no constitutional violation on most of Plaintiff's claims, his objection is overruled.

4.      **Plaintiff's Request to Amend**

At the end of his objections, Plaintiff seeks leave to amend his complaint. He makes a few specific requests, then generally requests leave to plead his best case with respect to any claim the Court dismisses. (*See* Dkt. No. 23 at 60.) The Court has already considered most of Plaintiff's specific requests—namely, allowing Plaintiff to clarify his allegations against Defendant Jenkins regarding review of his placement in administrative segregation, and noting the omission of his claim regarding denial of access to newspapers. Additionally, the Court accepts his submission of copies of the relevant grievances to further support his claims.

Given the posture of this case, Plaintiff may only amend or supplement his pleading if the Court grants him leave to do so. *See* Fed. R. Civ. P. 15(a). Rule 15(a)(2) requires a trial court to "freely give leave when justice so requires." Plaintiff is not automatically entitled to amend his complaint, however, and decisions concerning motions to amend are left to the sound discretion of the Court. *See Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998). To aid the exercise of that discretion, Courts in the Fifth Circuit consider five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004).

Here, Plaintiff has had at least two chances to hone his factual allegations. He filed responses to the Magistrate Judge's questionnaire (Dkt. No. 19), and detailed objections to the Magistrate Judge's findings, conclusions, and recommendations. He now asserts, in conclusory fashion, that if his objections and submission of grievances do not cure the flaws in his prior pleadings, he should be given further leave to amend. The Court finds that

Plaintiff has been given ample opportunity to plead his best case. Permitting further amendment now would unnecessarily delay the case. Plaintiff has been given notice and opportunity of the deficiencies in his complaint and has not shown why he has not addressed the deficiencies before now, after repeated opportunities to do so. Except as previously noted, Plaintiff's general request to amend is denied.

5.  **Conclusion**

Except as noted above, Plaintiff's objections are overruled, and the Court accepts and adopts the findings, conclusions, and recommendation of the Magistrate Judge.

As a result, the Court orders:

(1) The Court will enter a separate order directing service by the United States Marshal and requiring Defendant K. Young, in his individual capacity, to answer or otherwise plead to Plaintiff's claim for a procedural due process violation arising from Plaintiff's placement in administrative segregation without a hearing.

(2) All remaining claims and defendants are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

(3) There is no just reason for delay in entering a final judgment and final judgment should be entered as to the above-named Defendants and claims pursuant to Federal Rule of Civil Procedure 54(b).

(4) All relief not expressly granted is denied and any pending motions are denied.

Judgment shall be entered accordingly.

Dated January 31, 2022.

JAMES WESLEY HENDRIX
United States District Judge